IN THE
UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF
ILLINOIS EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>) No. 22 CR 519<br>v. ) Judge John F. Kness<br>RICARDO LARREA ) | |

SENTENCING MEMORANDUM

**I. The Presentence Investigation Report.**

    A. No objection to the advisory guideline range.

    Mr. Larrea has no objections to the guideline calculations as determined by the Presentence Investigation Report (PSR). He agrees that the total offense level is 17 and the Criminal History Category is I, yielding an advisory guideline range of 24 to 30 months custody. PSR, §§ 32, 40.

    B. Factual Clarifications to the PSR.

    Mr. Larrea has clarifications to the factual basis section of the PSR. Mr. Larrea's involvement as the straw purchaser in this offense came to light of authorities when the Chicago Police Department (CPD) conducted a search of the bedroom of an individual on February 21, 2019, resulting in a firearm that was straw purchased by Mr. Larrea on January 15, 2019. PSR, § 8. That individual stated he was holding the firearm for Mr. Larrea. That statement was false. After Mr. Larrea acted as a straw purchaser, he immediately gave the firearms to person he purchased for and had no further contact with the firearms, where they were held, or what happened to them.

1

The PSR notes that Mr. Larrea purchased a firearm for his brother. PSR, § 17. The agent noted that the brother was felon. The statement of the agent appears to be derived from Mr. Larrea's interview with the agents. Durin the interview, the agents asked Mr. Larrea about the firearm purchased for his brother. Mr. Larrea said he was because his brother had been in custody. Mr. Larrea's brother was not a felon at the time he purchased a firearm for his brother. Mr. Larrea did not know what a felon was. Mr. Larrea had no previous experience with the criminal justice system. Mr. Larrea wrongly assumed if someone had been to jail or used drugs, they must be a felon.

**II. Mr. Larrea's Background.**

Prior to this offense, Ricardo Larrea had never been involved with the criminal justice system. Unlike other defendants this court often sees, Ricardo was not in a gang, had no arrests prior to this offense or indicators of any prior criminal behavior other than related to his substance abuse. He has no history of violence against property or others. He has no history of narcotics dealing.

He was unsophisticated, susceptible to manipulation, had a history of family poverty, and was a victim of abuse. PSR, p. 10-12. Sealed Exhibit A, p. 9.[1] He was just 21 years old when he was approached by what appeared to be more sophisticated individual who was looking for effectively an easy mark to purchase guns for him. That person found Ricardo Larrea. For his part, Ricardo was susceptible to being convinced to acting as straw purchaser given his poverty, his mother's inability to afford insulin for his juvenile diagnosis of diabetes, and submissive psychological make up. *See* Sealed Exhibit A, p.7-8.

---

[1] Sealed Exhibit A is the psychological evaluation of Mr. Larrea. The defense submits this evaluation for the court's consideration. As it contains sensitive and confidential information, the details of the evaluation will not be discussed in this memorandum.

2

A. The Sentencing Guidelines authorize sentence reduction for youthful offenders due to advancement in understanding of young individuals' decision making, brain development, and other factors relevant to Mr. Larrea.

The United States Sentencing Commission (U.S.S.C.) authorized departures for youthful offenders. U.S.S.G. §5H1.1. This amendment was based on advancement of science and data surrounding youthful individual's brain development and the cognitive changes continued developing into the mid-20s. These cognitive changes impact individual behavior and culpability. "The amendment also reflects expert testimony to the Commission indicating that certain risk factors may contribute to youthful involvement in the criminal justice systems, while protective factors, including appropriate interventions, may promote desistance from crime." *U.S.S.G. Amendment to the Sentencing Guidelines, April 30, 2024.*

The Sentencing Commissions 2024 update to this guideline is based on advancements in empirical data on brain development and culpability visa vis a fully developed brain. Research has confirmed that the line between childhood and adulthood is not drawn at eighteen years old but rather is wide and unspecific. *See* Casey, B.J. *Healthy Development as a Human Right: Lessons from Developmental Science*. Neuroview, Vol. 102:4. May 22, 2019. (https://doi.org/10.1016/j.neuron.2019.03.035).[2] The evidence is that the brain is fully developed

---

[2] See Stringer, H. Justice for Teens. American Psychological Association, October 2017, Vol 48, No. 9, p. 44 (Justice for teens (apa.org); See also, Roper v. Simmons, 543 U.S. 551 (2005) (sentencing anyone under eighteen to the death penalty is a violation of the Eighth Amendment because juveniles are not fully developed sufficiently to form the requisite mens rea); Graham v. Florida, 560 U.S. 48 (2010) ("…" developments in psychology and brain science continue to show fundamental differences between juvenile and adult minds."); Haney, C. The Psychological Impact of Incarceration: Implications for Post-Prison Adjustment: From Prison to Home: The Effect of Incarceration and Reentry on Children, Families, and Communities. Office of the Assistant Secretary for Planning and Evaluation; U.S. Department of Health and Human Services. Nov. 30, 2001; (https://aspe.hhs.gov/reports/psychological-impact-incarcerationimplications-post-prison-adjustment-0); Lambie, I., The impact of incarceration on juvenile offenders. Clinical Psychology Review. Vol. 33, Issue 3. April 2013, page 448-459 (https://www.sciencedirect.com/science/article/abs/pii/S027273581300010X).

in a range beginning at least by the mid-twenties. *Id.* The ability to resist peer pressure, to make good decisions under stress and to avoid risks continue to be biologically challenging to people in their mid-20s. *Id.*

The evidence in this field has been recognized by federal courts. Youthful offenders are different than adults; they are more vulnerable to negative influences; but also, more capable of positive change. *See Miller v. Alabama*, 567 U.S. 460, 473 (2012); *Graham v. Florida*, 560 U.S. 48, 68 (2010); *Roper v. Simmons*, 543 U.S. 551, 569-70 (2005). These cases reflect evolving science and data showing that human brains mature more slowly than human bodies. Neuroscience has demonstrated that the brains of youthful offenders are physically less developed than adult brains. Specifically, their still-developing frontal lobes make young people (1) more prone to risky behavior; (2) less capable of impulse control; (3) less able to regulate emotions; (4) less able to engage in moral reasoning; (5) less able to consider the long term consequences of their actions; and (6) more prone to the effects of stress and peer pressure.[3]

The Sentencing Commission explicit recognition in the 2024 amendment of Guideline §5H1.1 states: "A downward departure may also be warranted due to the defendant's youthfulness at the time of offense or prior offenses. Certain risk factors may affect a youthful individual's development into the mid-20's and contribute to involvement in criminal justice systems, including environment, adverse childhood experiences, substance abuse, lack of educational opportunities, and familial relationships. In addition, youthful individuals generally

---

[3] *See* Scott, E., *et al.*, *Young Adulthood as a Transitional Legal Category: Science, Social Change, and Justice Policy*, 85 Fordham L. Rev. 641, 642 (2016) ("Over the past decade, developmental psychologists and neuroscientists have found that biological and psychological development continues into the early twenties, well beyond the age of majority."); Nat'l Acads. of Scis., Eng'g & Med., *The Promise of Adolescence: Realizing Opportunity for All Youth* 22 (2019), https://www.ncbi.nlm.nih.gov/books/NBK545481/pdf/Bookshelf_NBK545481.pdf (noting that "the unique period of brain development and heightened brain plasticity . . . continues into the mid-20s").

are more impulsive, risk-seeking, and susceptible to outside influences as their brains continue to develop into young adulthood. Youthful individuals are also more amenable to rehabilitation." U.S.S.G. §5H1.1.

Ricardo Larrea was 21 years old when he began this offense and 24 when it was completed. Outside the youthful offender brain development issues recognized by the sentencing commission as mitigation, Ricardo's particular psychological characteristic only underscores the commission's recognition that mitigation from the guideline range would be appropriate for the court to consider in Mr. Larrea's case.

B. Mr. Larrea assisted the authorities.

In October of 2019, Ricardo was involved in a training program to better his employment prospects. He was attending a welding training program through Calumet Welding. That same month he was asked to call the federal agents investigating this case. He called them and agreed to meet with the agents on two occasions. When he met with the agents, he was told that he was not in any trouble and they wanted his help in investigating the case. He agreed to speak with the agents. He admitted his involvement; he admitted the charge of making a false statement on the purchase forms and identified photographs of the person he purchased the firearms for and two other individuals.

Mr. Larrea did not have to meet with the authorities, but he agreed to do so. He admitted he made false statements when he purchased the firearms thus confessing to this offense. He further assisted the authorities by identifying the true purchaser and that person's accomplices. The ATF agents told him he would not get in trouble, but obviously he was charged with this offense. It is respectfully recommended that this court take Mr. Larrea's willingness to confess

5

his involvement and assist the authorities in identifying the true co-conspirator as mitigation deserving of a sentence reduction.

**III. Sentencing Recommendation Pursuant to 18 U.S.C. § 3553(a)(2).**

As the court will hear from Mr. Larrea at sentencing, he is deeply remorseful for getting involved in this offense in acting as straw purchaser over the course of three years that started when he was just 21 years old. He has no history of violence, drug dealing, or gang activity. He has never been to prison before, and it is respectfully suggested that incarceration is not necessary to meet the goals of sentencing to ensure public protection and deterrence. While certainly the offense of making false statements to a licensed firearm dealer is a serious offense, it is important to note that in this case, Mr. Larrea was never informed what the firearms would be used for. His psychological make up indicates that he is a submissive and passive individual who is apt to follow other's directions. As science indicates, as a person in his early twenties, he was less able to consider the long-term consequences of actions.

When criminals are looking for straw purchasers, they are looking for people who are not criminals and who are viewed as manipulable. Ricardo was both of those things.

Mr. Larrea has been on home incarceration for almost three years. He has had three positive cannabis tests during those three years. These relate to his depression and anxiety. He has had no movement violations. This period of home incarceration has significantly restricted Mr. Larrea and has been a form of punishment. The sentencing guidelines recognize that under certain conditions home incarceration can be imposed as a punishment. USSG §5C1.1(d).

Given the above, as well as reasons that will be elaborated at sentencing, it is respectfully suggested that a period of probation with the condition that the first 6 months be in community

confinement will be sufficient but not greater than necessary to meet the goals of sentencing for Mr. Larrea. A felony conviction can be a significant punishment for Mr. Larrea. A sentence of probation preserves all the sentencing options in the future that the court has today. That is a powerful hammer for the court to have during the period of supervision. It also recognizes the mitigation present with Mr. Larrea. It will afford the opportunity for Mr. Larrea to receive the mental health treatment that he needs as well as job training, and employment. It is respectfully suggested that job training leading to employment and mental health treatment will best assure public protection by reducing his risk of recidivism than an incarcerative sentence. Further such a sentence will be sufficient, but not greater than necessary to meet the goals of sentencing as required by 18 U.S.C. § 3553(a)(2).

                    Respectfully submitted,

                    FEDERAL DEFENDER PROGRAM
                    John F. Murphy
                    Executive Director


                    _____
                    Piyush Chandra
                    Attorney for Ricardo Larrea


PIYUSH CHANDRA
FEDERAL DEFENDER PROGRAM
55 E. Monroe St., Suite 2800
Chicago, IL 60603
(312) 621-8337